UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| SCOTTY RAY DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | 2:16-CV-00143-JRG |
| | ) | |
| vs. | ) | |
| | ) | |
| SOCIAL SECURITY, | ) | |
| COMMISSIONER OF, | ) | |
| | ) | |
| Defendant | ) | |

**REPORT AND RECOMMENDATION**

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. The plaintiff's application for Supplemental Security Income ["SSI"] under the Social Security Act was administratively denied following a hearing before an Administrative Law Judge ["ALJ"]. This is an action for judicial review of the Commissioner's decision denying benefits. The Plaintiff has filed a "Trial Brief," which the Court construes as Motion for Judgment on the Pleadings [Doc. 13]. The defendant Commissioner has filed a Motion for Summary Judgment [Doc. 15], to which Plaintiff filed a response [Doc. 17]. The matter is now ripe.

**I.    Standard of Review**

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial

were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Sec. of Health & Human Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

The applicable administrative regulations require the Commissioner to utilize a five-step sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC — do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4). A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

## II.     Evidence in the Record

In this case, Plaintiff applied for SSI benefits on May 16, 2011 (Tr. 226-34). He was born in 1973 and alleged that he became disabled on April 19, 2001, when he was 28 years of age (Tr. 226). In his Disability Report, Plaintiff alleged disability due to a nervous condition and pain in his back that "hurts at all times" (Tr. 257). Plaintiff's claim was denied on initial consideration (Tr. 82, 102-04) and on reconsideration (Tr. 83, 107-08). On January 25, 2013, following a hearing, an ALJ found that Plaintiff did not have any medically determinable impairments and was, therefore, not under a "disability" as defined in the Act (Tr. 84-92). On April 13, 2014, SSA's Appeals Council reversed the decision of the ALJ and remanded the case back to the ALJ to obtain additional evidence concerning Plaintiff's panic disorder, depressive disorder, and borderline intellectual functioning, further evaluate Plaintiff's mental impairments, and, if warranted, to obtain supplemental evidence from a vocational expert (Tr. 97-101).

On November 21, 2014, following a supplemental hearing, the ALJ found that Plaintiff was not under a "disability" as defined in the Act because he had no severe impairments (Tr. 19). On April 18, 2016, the Appeals Council denied Plaintiff's request for review (Tr. 1-6). Thus, Plaintiff has exhausted his administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner subject to judicial review.

Plaintiff was and is a younger individual. He has a tenth grade "limited" education in special education classes. Plaintiff has previous work experience as a water meter cover maker, truss builder, window screen builder, and since 2005, has been self-employed mowing lawns (Tr.

16, 258). He alleges that he can no longer work due to a nervous condition and pain in his back that "hurts all the time." (Tr. 257).

The medical evidence is accurately summarized in the Commissioner's brief as follows:

On March 19, 2010, Plaintiff went to the Carter County Health Department of the Tennessee Department of Health for treatment (Tr. 470). He reported that he had arthritis but no other medical or surgical history (Tr. 474). Plaintiff was evaluated for possible kidney stones and advised to go to the emergency room if his pain increased (Tr. 470-71). Plaintiff submitted pharmacy records from January 2011 through September 2014 (Tr. 497-500).

In a Work Activity Report, dated May 16, 2011, Plaintiff said that since 2005, he had been self-employed as a mower (Tr. 249). For six months of the year, he earned about $500 per month and for another three months of the year, he earned $300 per month (Tr. 249).

On June 10, 2011, Dr. Stanley, a consultative psychological examiner, noted that Plaintiff was not taking any psychotropic medication, and he reported no history of psychiatric or psychological treatment (Tr. 411). Dr. Stanley found that Plaintiff's affect was dysphoric, but he observed no unusual or bizarre behaviors or mannerisms during Plaintiff's examination (Tr. 413). Plaintiff's attention span was fair to good, and he was responsive to questioning (Tr. 413). His speech and articulation were within normal limits (Tr. 413). Dr. Stanley diagnosed Plaintiff with panic disorder and mild depression (Tr. 414). He found Plaintiff would be mildly impaired in his ability to follow simple instructions and moderately impaired in his ability to perform complex instructions, concentrate for a full workday, socialize with others, and adapt to changes in the workplace (Tr. 414).

On June 30, 2011, Dr. Dubois, a state agency medical consultant, reviewed the evidence of record and found Plaintiff had mild depression, mild to moderate panic disorder, and possible borderline intellectual functioning (Tr. 417-21). He opined that Plaintiff could perform simple and detailed tasks, concentrate for two-hour periods, with customary breaks, work effectively with coworkers and supervisors. He would work better with things rather than people and adapt to infrequent changes in the workplace (Tr. 432).

On July 6, 2011, Dr. Purswani, a consultative examiner, conducted a consultative examination of Plaintiff but assessed no limitations for Plaintiff (Tr. 434). On July 14, 2011, Plaintiff completed a Function Report and reported that he took care of pets and his son when his son stayed with him (Tr. 271).

On July 21, 2011, Dr. Parrish, a state agency medical consultant, reviewed the record and determined that Plaintiff had no severe impairment (Tr. 440-44). On

October 28, 2011, Dr. Stumb, another state agency medical consultant, reviewed the record and determined that Plaintiff had no severe impairment (Tr. 445).

Plaintiff was seen at the Sycamore Shoals Hospital for shoulder pain, on December 8, 2011, but an x-ray was unremarkable (Tr. 452). A computer tomography (CT) scan of Plaintiff's cervical spine showed a mottled appearance possibly related to multiple hemangiomas but was otherwise unremarkable (Tr. 450). Plaintiff was seen, on March 13, 2012, for myalgia and muscle pain (Tr. 454-56). He was given Flexeril medication and told to follow-up for chronic back pain with his primary care physician or the health department (Tr. 455).

Plaintiff returned to the Carter County Health Department, on September 25, 2012, as a follow-up from an August 2012 hospital visit, in which he thought he was having a heart attack but was instead having a panic attack (Tr. 467). He reported that he had bone spurs in his neck with chronic neck pain, panic attacks, and ulcers (Tr. 464). He declined a referral to an orthopedic specialist (Tr. 468). He was prescribed Celexa and Ibuprofen medications (Tr. 468).

On May 20, 2014, Plaintiff sought treatment at Rural Health Services (Tr. 476). Plaintiff complained of musculoskeletal pain in his neck, with an onset of two years earlier, which occurred intermittently but was worsening (Tr. 476). Plaintiff also reported a panic attack occurring two days previously and reported he had this problem on and off for about 20 years (Tr. 476). He was diagnosed with depression, cervical neck pain, and abdominal discomfort (Tr. 478).

On September 2, 2014, x-rays of Plaintiff's cervical and lumbar spine were unremarkable (Tr. 491, 494). A magnetic resonance imaging scan (MRI) of Plaintiff's cervical spine revealed mild asymmetric uncovertebral hypertrophy and facet arthropathy on the left side of the C3-C4 level, causing mild left neural foraminal stenosis, slightly progressed from a prior exam, but was otherwise unremarkable (Tr. 492-93).

[Doc. 16, pg. 2-4].

At the first hearing conducted on November 27, 2012, Plaintiff, a medical expert, and a vocational expert ["VE"] testified. (Tr. 54). There, Plaintiff testified that he could not work because of panic attacks and spurs in his neck. (Tr. 58, 61). The medical expert, Dr. Bland, testified that the medical records showed that Plaintiff had mild scoliosis and full range of motion of his shoulder. (Tr. 64). While he complained of back pain, no x-rays revealed any medical condition. (Tr. 64). Dr. Bland testified that the evidence supported a finding that Plaintiff did not

have any severe impairments. (Tr. 65). Finally, Ms. Bardsley testified as a VE (Tr. 66). She was given a hypothetical question regarding an individual who had no physical restrictions but needed to work with things rather than people. (Tr. 66). Ms. Bardsley testified that such an individual could work as a general laborer, hand packager, and sorter, all of which existed in significant numbers in the national economy. (Tr. 67).

Pursuant to the Appeals Council's remand, a supplemental administrative hearing was conducted on September 30, 2014 (Tr. 26). Plaintiff testified that he still had problems with his neck and became nervous in crowds. (Tr. 31, 34). Mr. Hankins testified as a VE. (Tr. 37). He was given a hypothetical question involving an individual who was limited to light work, could perform multi-step instructions, could work better with things rather than people, and could adapt to infrequent changes in the workplace. (Tr. 38). Mr. Hankins responded that such an individual could perform work as a housekeeper, electrical components assembler, and small products assembler, all of which existed in significant numbers in the national economy. (Tr. 38-39).

### III.    The ALJ's Findings

On November 21, 2014, the ALJ rendered his decision. He first found that Plaintiff has not engaged in substantial gainful activity since May 13, 2011, the original application date. (Tr. 15). At the second step, the ALJ found that no medical signs or laboratory findings exist to substantiate the existence of a severe impairment. (*Id.*).

The ALJ reviewed and summarized the medical evidence in the record. (Tr. 15-19). He afforded great weight to Dr. Susan Bland, an internist who testified at the prior administrative hearing, that Plaintiff did not suffer from an impairment that met or equaled the criteria of any impairment listed in the Listing of Impairments. The ALJ also gave great weight to Dr. Dubois's opinion about Plaintiff's physical limitations because the ALJ found that those opinions were

supported by the overall lack of objective findings. The ALJ gave less weight to Dr. Dubois' opinion regarding Plaintiff's mental limitations, claiming that the assessment was inconsistent with the objective medical evidence and was based upon a single consultative exam. He claimed that Dr. Dubois' opinion was based only upon Plaintiff's subjective complaints rather than any objective medical findings. (Tr. 19, 430-32). The ALJ gave less weight to the opinion of Mr. Stair, signed off by Dr. Stanley, as his opinion was based upon a "snapshot evaluation" of the Plaintiff's subjective allegations, again claiming that it was not consistent with the entirety of the record or Plaintiff's own claim of intermittent problems with panic attacks for twenty years. (*Id.*).

The ALJ noted that Plaintiff did not receive significant treatment for any physical or mental condition. The pharmacy records indicate that Plaintiff rarely takes psychotropic medications. Plaintiff has reported that he has experienced panic attacks on and off for approximately twenty years. Although Dr. Stanley assessed Plaintiff with a GAF of 52, the ALJ noted that the Commissioner has declined to endorse this scale for use in disability programs. Accordingly, the ALJ gave no weight to the GAF score.

The ALJ noted that even if Plaintiff were found to have a severe mental impairment which limited him to unskilled work, pursuant to 20 C.F.R., Subpart P, Appendix 2, approximately 2,500 separate sedentary, light and medium unskilled occupations exist that can be identified, each occupation representing numerous jobs in the national economy that do not require skills or previous experience, which can be performed after a short demonstration or within thirty days. (*Id.*). The ALJ also highlighted that Plaintiff currently works, and although the work activity does not constitute substantial gainful activity, it demonstrates that he is able to perform work activity when motivated to do so. (*Id.*). The ALJ concluded that no medical evidence exists to substantiate the existence of a severe impairment imposing significant work-related limitations of function.

7

(*Id.*). He thus determined that Plaintiff has not been under a disability since May 13, 2011 through the date of the decision. (*Id.*).

## IV. Analysis

Plaintiff asserts the following alleged errors: (1) the ALJ erred in finding Plaintiff did not suffer from a severe impairment, and (2) the Appeals Council erred in denying his second request for review.

### A. Finding of No Severe Impairments

Plaintiff alleges that the ALJ erred by determining that he did not have a severe impairment, claiming that Appeals Council rejected this conclusion and remanded it for further consideration. That is not the case. The Appeals Council did remand the case for further consideration. On remand, the ALJ actually found impairments, unlike he did initially, but determined that those impairments were not so severe that they imposed significant work-related limitations of function. (Tr. 19). "The mere existence of . . . impairments . . . does not establish that [a plaintiff] was significantly limited from performing basic work activities for a continuous period of time." *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 930 (6th Cir. 2007). Indeed, the ALJ considered the additional medical proof Plaintiff submitted and again conducted an evidentiary hearing in which Plaintiff testified. Thus, the ALJ acted in conformity with the remand from the Appeals Council.

Thus, the real issue is whether, at step two in the sequential process, substantial evidence supports the ALJ's decision that Plaintiff had no severe impairments. If a claimant does not have any impairment or combination of impairments that significantly limits his physical or mental ability to do basic work activities, he is not disabled, and the analysis ends. 20 C.F.R. §§ 404.1520(a)(4); 404.1520(c). At step two, Plaintiff has the burden to show that he "has a medically

8

severe impairment or combination of impairments." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

To answer this question, the Court must examine what medical evidence was before the ALJ in making his judgement. With regard to physical impairments, Plaintiff argues that because the MRI showed a "mottled" appearance of the cervical spine, (Tr. 450), Plaintiff suffers from a severe impairment. But for this physical impairment to be severe, it must "significantly limit Plaintiff's physical ability to do basic work activities." See 20 C.F.R. 404.1520(c). Basic work activities are the abilities and aptitudes necessary to do most jobs.[1] 20 C.F.R. § 404.1522. Dr. Krish Purswani, a state agency medical consultant, assessed back pain and left shoulder pain but did not indicate that it impaired Plaintiff's activities. Dr. Parrish, a state agency medical consultant, also determined Plaintiff had no severe physical impairment. (Tr. 440, 443). It is not enough to have a "mottled" cervical spine. The physical impairment must have the effect of limiting Plaintiff's basic work activities. It is clear from the record substantial evidence supports the ALJ's finding that the Plaintiff does not suffer from a severe physical impairment. See *Stankoski v. Astrue*, 523 F.App'x 614 (6th Cir. 2013).

Regarding mental impairments, first, there is the opinion of Dr. Stanley, a consultative psychological examiner. While Dr. Stanley noted that Plaintiff had no history of psychiatric or psychological treatment, he opined that Plaintiff suffered from a panic disorder and mild depression. (Tr. 414). Dr. Stanley found that this moderately impaired Plaintiff's ability to

---

[1] Examples of basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in work environments. *Id*.

perform complex instructions, concentrate for a full workday, socialize with others and adapt to changes in the workplace. (Tr. 414).

Dr. Jayne Dubois, also a state agency medical consultant, noted that Plaintiff suffered from mild depression, mild to moderate panic disorder, and possible borderline intellectual functioning (Tr. 417-21). Dr. Dubois opined that these mental disorders resulted in a moderate restriction of daily activities, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence and pace. (Tr. 426). Dr. Dubois also noted a marked limitation in Plaintiff's ability to interact appropriately with the general public. (Tr. 431). She also noted moderate limitations in Plaintiff's ability to understand, remember and carry out detailed instructions, maintain attention and concentration, to work in coordination with others, to complete a normal work-day and workweek without interruptions, to accept instructions and respond appropriately to criticism, and to get along with co-workers. (Tr. 429-30). Dr. Dubois finally noted moderate limitations in Plaintiff's ability to respond appropriately to changes in the work setting and setting realistic goals or making plans independently. (Tr. 431). While Dr. Purswani found no severe impairments, he only conducted a physical examination and did not address any mental impairments (Tr. 434). Likewise, Dr. Parrish also found no severe physical impairments, but did not address mental impairments. (Tr. 440-44).

While Step Two is considered a *de minimis* hurdle, when assessing whether a mental impairment is severe, "the regulations provide that if a claimant's degree of [mental] limitation is none or mild, the Commissioner will generally conclude the impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in" a claimant's "ability to do basic work activities." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 428 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1520a(d))(internal quotations omitted).

In this case, Dr. Stanley found moderate impairment in performing complex instructions, concentrating, socializing and adapting in the workplace. Dr. Dubois found a marked limitation in Plaintiff's ability to interact appropriately with the general public. The ALJ simply discounted those medical opinions without any justification. The ALJ gave Dr. Dubois's opinion less weight because it was "inconsistent with the objective evidence" without identifying what that evidence was or identifying any other medical evidence that would contradict her opinion. The ALJ likewise had to discount Dr. Stanley's opinion and that of Mr. Stair. His basis in doing so here was because it was a "snapshot evaluation" and not otherwise consistent with the "entirety of the record." (Tr. 19). In weighing the medical evidence, "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009)(citations and quotations omitted). In this case, the ALJ simply ignored the only medical evidence in the record regarding Plaintiff's mental impairment. He pointed to no other consultative examiner or other physician who gave any opinion that he could accept in reaching his determination that Plaintiff did not suffer from a severe impairment. Thus, he has substituted his judgment for that of the medical examiner and did not have a basis to do so. Substantial evidence does not support his finding that Plaintiff does not have a severe impairment, requiring a remand.

The ALJ attempts to save this case by referencing the Medical-Vocational guidelines. (Tr. 19). To be sure, the ALJ may rely on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. See *Anderson v. Comm'r of Soc. Sec.*, 406 F.Appx. 32, 35 (6th Cir. 2010); *Wright v. Massanari*, 321 F.3d 611, 615-16 (6th Cir. 2003). In this case, the ALJ has not laid a sufficient

foundation to employ the grids, especially in light of the error made in assessing Plaintiff's nonexertional limitations.

**B.    Decision of Appeals Counsel**

Plaintiff also asserts that the decision of the Appeals Counsel declining to review the ALJ's second determination conflicts with its initial remand as the ALJ's decision was allegedly based on the exact same reason as the first denial of benefits. He avers that the Counsel's failure to "stand by their decision" undermines the principles of *stare decisis*. The Appeals Counsel's decision to not review the ALJ's second determination is not subject to judicial review. The Court is confined to review "the final decision of the [Commissioner]." See 42 U.S.C. § 405(g). Accordingly, Plaintiff's claim of error is without merit.

**V.    Conclusion**

Based upon the above findings, the undersigned respectfully RECOMMENDS that Plaintiff's Motion for Judgment on the Pleadings [Doc. 13] be GRANTED, and the Commissioner's Motion for Summary Judgment [Doc. 15] be DENIED.[2]

                                              Respectfully submitted,

                                              s/Clifton L. Corker
                                              United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).